J.Y.C.C., et al.,             )
                                   )
          Plaintiffs,      )
                                   )
v.                            )     Case No. 4:15 CV 1704 RWS
                                   )
DOE RUN RESOURCES, CORP.,  )
et al.,                  )
                                   )
          Defendants.   )

## MEMORANDUM AND ORDER

Plaintiffs in this matter are more than sixteen hundred Peruvian children who live near Defendants' lead smelter in La Oroya, Peru. Plaintiffs allege that they were injured after being exposed to toxic lead emissions from the smelter. The corporate defendants are United States companies, who through their Peruvian subsidiary, owned and operated the lead smelting and refining complex. The individual defendants in this matter are the directors and/or officers of the defendant companies.

Defendants move to dismiss this case pursuant to the doctrine of international comity, arguing that the principles of international comity require abstention. In a separate motion for the determination of foreign law, Defendants assert that the law of Peru applies to all aspects of this case. Plaintiffs oppose

abstention and argue for the application of Missouri law.  Significantly, Defendants are also defendants in a companion case in this Court, <u>A.O.A, et al. v, Rennert, et al.</u>, Case No. 4:11 CV 44 CDP.[1]  In that case United States District Judge Catherine D. Perry ruled upon similar motions filed by Defendants in that case based on the same facts, legal theories, and claims in the present case.  Because these same issues were decided in Judge Perry's case, I will adopt her reasoning and conclusions of law.  Under the principles of issue preclusion Defendants are barred from re-litigating these issues in this case.  Even if Defendants were not precluded from raising these matters again, I will deny each motion on the merits of their claims.  I conclude that abstention based on international comity is not appropriate and that the law of Missouri should apply to this case.

## I.      Issue Preclusion Bars the Defendants

In the companion case, <u>A.O.A, et al. v, Rennert, et al.</u>, Judge Perry already decided that dismissal premised upon the doctrine of international comity is not appropriate and that Missouri law will apply to the claims in this case.  4:11 CV 44 CDP, 2018 WL 5013854, (E.D. Mo. Oct. 16, 2018).   The underlying facts of the companion case and this action are the same.  Defendants are defendants in both actions and request identical relief – dismissal upon the grounds of international

---

[1] Hundreds of other Peruvian children have filed similar claims against the same defendants arising out of the La Oroya lead operations.  They are represented by different counsel and their cases have been consolidated before United States District Judge Catherine D. Perry in <u>A.O.A, et al. v, Rennert, et al.</u>, Case No. 4:11 CV 44 CDP.

comity and a determination that Peruvian law applies. Defendants present the same legal theories in both cases to support their arguments. Under the principles of issue preclusion, Defendants are barred from re-litigating the same issues in this case that have already been conclusively decided in the companion case.

"The preclusive effect of a federal-court judgment is determined by federal common law." Taylor v. Sturgell, 553 U.S. 880, 891 (2008) (citation omitted). Moreover, "federal law determines the effects under the rules of res judicata of a judgment of a federal court." Restatement (Second) of Judgments § 87 (1982). Issue preclusion prohibits "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment." New Hampshire v. Maine, 532 U.S. 742, 748-49 (2001). Issue preclusion is subject to due process limitations, meaning that the prior judgment lacks a conclusive effect on the current litigant unless the prior litigant had the opportunity to be heard. Richards v. Jefferson County, 517 U.S. 793, 797 n.4 (1996).

Under federal law, issue preclusion applies when: (1) the issue to be precluded is identical to the issue decided in the first action; (2) the first action resulted in final adjudication on the merits; (3) the party being estopped was a party or in privity in the first action; and (4) the party being estopped was given a full and fair opportunity to be heard on the issue in the first action. Irving v.

Dormire, 586 F.3d 645, 648 (8th Cir. 2009) ("The preclusion principle embodied in the doctrine of collateral estoppel is based upon the need to conserve judicial resources and prevent inconsistent decisions.")

The present case and the companion case involve the same issues of law. Defendants are the same corporate entities and individuals. The factual underpinnings of both cases are the same, as both cases involve the alleged lead poisoning of hundreds of children from Defendant's metallurgical complex in Peru. The only significant difference between the cases is the identity of the plaintiffs. Defendants raise the same legal theories in both cases, arguing that comity requires dismissal of this action because this Court's ruling will infringe upon Peru's sovereignty. In their motion based on foreign law, Defendants argue that the internal affairs doctrine mandates the application of Peruvian law, that Missouri and Peruvian law are in conflict, and that Peru has a greater interest under the most significant relationship test, thus Peruvian law should apply. Moreover, the parties rely on the same evidence and expert testimony regarding comity and determining foreign law. Judge Perry already rejected these legal theories, reasoning that comity will not infringe upon Peru's sovereignty and this Court could hold defendants liable for their tortious conduct in Missouri. Rennert, 2018 WL 5013854 at 23. Further, the companion case held the internal affairs doctrine

is not applicable in this matter and that there is no conflict on the substantive claims between Missouri and Peruvian law.  Id. at 8 and18.

Moreover, the companion case actually decided and resulted in a final adjudication of both the comity and foreign law issues.  Issue preclusion treats as final only those matters "actually and necessarily decided in a prior suit."  Brown v. Felsen, 442 U.S. 127, 139 n.10 (1979).   Issue preclusion may be raised in a motion to dismiss.  C.H. Robinson Worldwide, Inc. v. Lobrano, 695 F.3d 758, 764 (8th Cir. 2012).  Here, the companion case explicitly decided the comity and foreign law issues, ruling that dismissal is not warranted on the basis of comity and that Missouri law will govern the outcome of this case.  When an issue is actually decided by a court of competent jurisdiction, "that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation."  Montana v. United States, 440 U.S. 147, 153 (1979), citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5 (1979).  See also John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL-CIO, 913 F.2d 544, 563 (8th Cir. 1990) ("finality for purpose of appeal under [28 U.S.C.] section 1291 is not necessarily the finality that is required for issue preclusion purposes.").  Issue preclusion may be invoked when "previous litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be

litigated again." In re Nangle, 274 F.3d 481, 485 (8th Cir. 2001) (internal quotation and citations omitted).

Finally, the defendants had a full and fair opportunity to be heard on this issue. The principles of issue preclusion are not rigidly applied, thus the focus when applying the principles of collateral estoppel "will work an injustice on the party against whom estoppel is urged." Oldham v. Pritchett, 599 F.2d 274, 279 (8th Cir.1979). Defendants fully briefed both matters before Judge Perry and had the opportunity to litigate the issue. I note that Defendants moved for a foreign law determination early on in that lawsuit and Judge Perry withheld a determination so that further discovery could be conducted relevant to that issue. See Reid v. Doe Run Res. Corp., 74 F. Supp. 3d 1015, 1026 (E.D. Mo. 2015). Defendants will not be unfairly prejudiced by the preclusive effect of the companion case because as the same parties, Defendants have fully participated in and have had the opportunity to be heard on the issues now before me. See Irving, at 648-649. Because all of the requisite elements for issue preclusion to apply have been met in this case, Defendants are precluded from asserting the same relief and legal theories with respect to international comity and determining foreign law issues they previously raised in the companion case before Judge Perry.

I note that the parties did not the raise the preclusive effect of Judge Perry's rulings in the companion case. However, I may raise the issue sua sponte. "If a

court is on notice that it has previously decided the issue presented, the court may dismiss the action sua sponte, even though the defense has not been raised." Arizona v. California, 530 U.S. 392, 412 (2000). A court may raise the issue sua sponte because doing so is consistent with policies that underlie the purpose of preclusion: avoiding the burdens of a party unnecessarily litigating an action twice and preserving judicial resources. Although Judge Perry's rulings in the companion case are currently on appeal before the United States Circuit Court of Appeals for the Eighth Circuit, the mere appeal of a ruling does not defeat the preclusive effect of a valid and final judgment. Ross ex rel. Ross v. Board of Educ. of Tp. High School Dist. 211, 486 F.3d 279, 284 (7th Cir. 2007) ("the fact that an appeal was lodged does not defeat the finality of the judgment" for preclusion purposes.").

Issue preclusion bars Defendants from moving to dismiss on the basis of international comity and requesting that Peruvian law applies to the outcome of this case. Defendants have raised the exact same legal theories, presented the same evidence, and relied on the same facts as in the companion case. All elements necessary to assert issue preclusion have been satisfied. As a result, the motion to dismiss pursuant to the doctrine of international comity and the motion to determine foreign law will be denied under the principles of issue preclusion.

## II.  International Comity

Even if Defendants arguments regarding international comity are not precluded, I find that comity is not warranted as grounds for abstention. Defendants argue that maintaining this action would interfere with Peru's sovereign interests and would improperly impose United States' standards to regulate the environment and mining operations in Peru.  Plaintiffs' assert that Defendants have waived this argument or that it is governed by the law of the case. This argument is without merit.  "[Q]uestions of comity can be raised on the court's own initiative," Thomas v. State of Ind., 910 F.2d 1413, 1415 (7th Cir. 1990), and issues relating to international comity can be raised on appeal even if the issue was not raised in the district court, Fortino v. Quasar Co., a Div. of Matsushita Elec. Corp. of Am., 950 F.2d 389, 391 (7th Cir. 1991).

Applications of international comity are context specific, thus a precise definition remains elusive; however, comity is conceptualized as deference to foreign government actors that is not required by international law but is incorporated into domestic law.  William S. Dodge, International Comity in American Law, Colum. L. Rev., 115 Colum. L. Rev. 2071, 2084 (2015).  Although the rationales of various international comity doctrines may vary, according respect for the sovereign interest of other nations and the interest of the United States

remains paramount. See Ungaro-Benages v. Dresdner Bank AG, 379 F.3d 1227, 1238 (11th Cir. 2004).

There are several ways of analyzing whether a court should abstain from deciding a case based on international comity. Defendants advocate for dismissal based on the factors set out in the Restatement (Third) of Foreign Relations Law § 403 (1987) and under the concept of prescriptive comity. Plaintiffs discuss the concept of prospective adjudicative comity. Under any of the tests, I conclude that abstention on international comity grounds is not required or appropriate here, for the reasons that follow.

Section 403 of the Restatement (Third) of Foreign Relations Law cites eight factors that a court should consider in determining whether exercising jurisdiction is reasonable:

> (a)     the link of the activity to the territory of the regulating state, *i.e.*, the extent to which the activity takes place within the territory, or has substantial, direct, and foreseeable effect upon or in the territory;
>
> (b)     the connections, such as nationality, residence, or economic activity between the regulating state and the person principally responsible for the activity to be regulated, or between that state and those whom the regulation is designed to protect;
>
> (c)     the character of the activity to be regulated, the importance of regulation to the regulating state, the extent to which other states regulate such activities, and the degree to which the desirability of such regulation is generally accepted;

(d)     the existence of justified expectations that might be protected or hurt by the regulation;

(e)     the importance of the regulation to the international political, legal, or economic system;

(f)     the extent to which the regulation is consistent with the traditions of the international system;

(g)     the extent to which another state may have an interest in regulating the activity; and

(h)     the likelihood of conflict with regulation by another state.

Prescriptive comity, or "legislative comity," is comity afforded to lawmakers, often legislatures.  This form of comity serves as a guide to statutory interpretation "where the issues to be resolved are entangled in internationals relations." In Re Maxwell Communication Corp. plc by Homan, 93 F.3d 1036, 1047 (2d Cir. 1996).  In essence, this form of comity serves as a means "to avoid unreasonable interference with the sovereign authority of other nations."  F. Hoffmann-La Roche Ltd. v. Empagran S.A., 542 U.S. 155, 164 (2004).   This form of comity is inapplicable to the case at hand because the legislative authority of either Peru or the United States is not at issue.

"Prospective adjudicative comity" is the phrase used to describe a doctrine of abstention similar to forum non conveniens.[2]  See Ungaro-Benages, 379 F.3d at

_____

[2] The related concept of retrospective adjudicative comity has no application here, because it considers whether to respect the judgment of a foreign tribunal or to defer to foreign proceedings, Ungaro-Benages, 379 F.3d at 1238, and here there is no Peruvian judgment or

1238-39.  Three interests inform this analysis:  "the interests of our government,

the foreign government, and the international community in resolving the dispute

in a foreign forum."  Id. at 1238.  The most important interests are the sovereign

interest of both the United States and the foreign government.  See Perforaciones

Exploracion y Produccion v. Maritimas Mexicanas, S.A. de C.V., 356 F. App'x

675, 681 (5th Cir. 2009) (Mexico's silence is dispositive basis to reject abstention);

Mujica v. Airscan, 771 F.3d 580, 609-12 (9th Cir. 2014) (abstention warranted

because both United States and Columbian governments requested dismissal upon

international comity).

Under both the "prospective adjudicative" test and factor (g) of the

Restatement, the most important aspect of a comity analysis is to determine the

sovereign interests.  Restatement (Third) of Foreign Relations Law § 403, reporter

note 6 (1987) ("it may be necessary to identify and weigh the respective interests

of the concerned states in regulating (or refraining from regulating) a given activity

or transaction.").  Comity requires a particularized analysis "of the respective

interests of the foreign nation[.]"  Societe Nationale Industrielle Aerospatiale v.

U.S. Dist. Court for S. Dist. of Iowa, 482 U.S. 522, 543-44 (1987).

For the United States' interest, if the State Department expresses a specific

opinion on the implications of "exercising jurisdiction over particular petitioners in

proceeding.  Cf. Goss Int'l Corp. v. Man Roland Druckmaschinen Aktiengesellschaft, 491 F.3d
355, 365-66 (8th Cir. 2007) (once foreign judgment is final the doctrine of res judicata should
apply).

connection with their alleged conduct, that opinion might well be entitled to deference as the considered judgment of the Executive on a particular question of foreign policy." Republic of Austria v. Altmann, 541 U.S. 677, 702 (2004). Dismissal of a case may be warranted when the State Department files a statement of interest noting that the litigation impedes an important foreign policy initiative or would result in "serious implications for stability in the region." Hwang Geum Joo v. Japan, 413 F.3d 45, 52 (D.C. Cir. 2005); see also Whiteman v. Dorotheum GmbH & Co. KG, 431 F.3d 57, 63 (2nd Cir. 2005). The State Department has not expressed any position on this litigation.

The parties have submitted competing letters purporting to reflect the views of the Peruvian government. Defendants provided a 2007 letter from the Peruvian Minister of Economy and Finance, and a 2017 letter from the same office. [Doc. # 137, Ex. 11 (2007 letter), Doc. # 137, Ex. 2 (2017 letter)] Plaintiffs have submitted two letters from Peruvian Congressmen, both dated August 2017. [Doc. # 180, Ex.s E and F] Defendants' letters are addressed to United States officials. The 2007 letter specifically asked the Department of State to notify the Circuit Court of the City of St. Louis[3] that this litigation should be handled by the courts of Peru. The 2017 letter is addressed to the Chief of Investment Arbitration, Office of the Legal Adviser, Department of State and says it is being sent pursuant to the United

---

[3] This case was subsequently removed from the state court to this Court and became the companion case presided over by Judge Perry.

States-Peru Trade Promotion Agreement. Included in its lengthy recitation about Peru's environmental actions and the arbitration between Renco and Peru is a reference back to the prior 2007 letter's statements that Peruvian courts should hear these cases.

The letters Plaintiffs have submitted are from Peruvian Congressmen who represent the La Oroya area; these letters are directed to Peru's Ministry of Finance. The first of these letters says that the cases should be allowed to proceed in this Missouri court, and expresses concern that "an official from your sector has been interfering in a judicial process where the Peruvian State is not a party." . [Doc. # 180, Ex. E] The second letter speaks favorably about the cases proceeding in Missouri and asks for information "regarding the legal basis, justification and motivation for" the 2017 letter submitted by defendants. [Doc. # 180, Ex. F]

Courts may consider "any relevant material" when weighing a foreign state's views about the meaning of its own laws. Animal Sci. Prods. v. Hebei Welcome Pharm. Co. Ltd., 138 S. Ct. 1865, 1870 (2018). When considering foreign statements, a court is "neither bound to adopt the foreign government's characterization nor required to ignore other relevant materials." Id. at 1873. Instead, courts should look to the context and purpose of the statement, role and authority of who is offering the statement, and consistency with past positions. Id. The Supreme Court also pointed out that "[w]hen a foreign government makes

conflicting statements or . . . offers an account in the context of litigation, there may be cause for caution in evaluating the foreign government's submission." Id. (internal citation omitted).

I conclude that the letters presented here are not persuasive one way or the other regarding Peru's interest in this case. The letters not only contradict one another, but they were obtained by each side for the purpose of supporting their positions in this litigation. It appears to me that different Peruvian officials have taken different sides in this dispute, and none fully represents the position of the Peruvian government. Moreover, even aside from the contradictory positions demonstrated by the letters, the 2017 letter submitted by Defendants does not expressly advocate for dismissal on grounds of comity, but merely states that Peru's sovereignty *might* be affected by this litigation. In other cases foreign governments have expressly declared such interests, even at the district court level. See Mujica, 771 F.3d at 586 (Columbian government sent two statements of interest advocating for dismissal). The lack of an express position is a significant factor in deciding where the litigation should proceed. Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1378 (11th Cir. 1998).

The sovereign interests of the United States and Peru do not advocate for dismissal on the grounds of international comity. The lack of an express sovereign interest weighs heavily against dismissal, and three of the remaining Restatement

factors support this conclusion. Restatement factors (b), (c), and (d) consider

nationality of the parties and residence, the activity at issue, and the expectations of

the parties. Although Plaintiffs are Peruvian, Defendants are American and the

wrongful activity is alleged to be the decisions made and actions implemented by

Defendants acting in the United States. A United States District Court may

exercise jurisdiction over a domestic corporation even when the alleged injury

occurred entirely abroad. Jota v. Texaco, Inc., 157 F.3d 153, 155 (2nd Cir. 1998).

A state has a "significant interest in providing a forum for those harmed by the

actions of its corporate citizens." Carijano v. Occidental Petroleum Corp., 643

F.3d 1216, 1232 (9th Cir. 2011). And of course, Peru has an interest in seeing that

its Peruvian citizens receive appropriate compensation if they have been harmed by

wrongful actions of Americans.

As the home forum state, Missouri has a cognizable state interest in

regulating the conduct of its citizens who are subject to the reach of applicable

state law. CL-Alexanders Laing & Cruickshank v. Goldfeld, 709 F. Supp. 472,

481 (S.D.N.Y 1989) (a cognizable state interest exists when a United States

corporation executed securities fraud abroad). No conflict occurs "where a person

subject to regulation by two states can comply with the laws of both." Hartford

Fire Ins. Co. v. California, 509 U.S. 764, 799 (1993) (internal quotation marks and

citation omitted). Defendants are capable of complying with both Peruvian and

relevant state laws. The regulated activity is of importance to Missouri and Missouri has an interest in ensuring a proper forum exists for those harmed by its corporate citizens. Carijano, 643 F.3d at 1232. Finally, Defendants should expect litigation where they are at home because a "defendant's home forum always has a strong interest in providing a forum for redress of injuries caused by its citizens." Reid-Walen v. Hansen, 933 F.2d 1390, 1400 (8th Cir. 1991).

Of the remaining Restatement factors, only factor (a) favors abstention. Factor (a) concerns the forum where the injury took place. Plaintiffs are Peruvian citizens who were injured entirely in Peru. See Torres v. Southern Peru Copper Corp., 965 F. Supp. 899 (S.D. Tex. 1996) (dismissal warranted when activity and harm occurred in Peru and plaintiffs are all Peruvian nationals). Restatement factors (e) and (f) are neutral because the claims at issue in this case do not implicate the "international legal systems." Peru's sovereignty is not at issue and the adjudication of these claims will not upset the traditions of the international system. To the extent that Defendants argue that the United States-Peru Trade Promotion Agreement shows that Peruvian sovereignty would be affected by this case going forward, that position is not supported by the agreement. Chapter 18.4, paragraph four of that agreement recognizes that suits like this could go forward in the United States, as it provides that each party (i.e., the United States and Peru) must provide remedies "for violations of a legal duty under that *Party's law*

relating to the environment or environmental conditions affecting human health, which may include rights such as: to sue another person under *that Party's jurisdiction* for damages under *that Party's laws*." [Doc. # 137, Ex. 10 at p. 3 (emphasis added)] "The interpretation of a treaty, like the interpretation of a statute, begins with its text." <u>Medellin v. Texas</u>, 552 U.S. 491, 506 (2008).

Finally, Restatement factor (h) is neutral because the claims at issue do not appear to conflict with Peruvian law; therefore, there is no likelihood of conflicting regulations by another state because defendants can comply with the laws of both. <u>Hartford Fire</u>, 509 U.S. at 799.

When the interests of Peru and the United States are considered, the interest of Missouri in regulating the conduct of its own citizens, both at home and abroad, outweighs the interest of Peru. After all, citizens of Peru have come to this Court seeking recompense for what they allege are improper actions taken in America by American defendants. Although there is no doubt that Plaintiffs suffered the consequences in Peru, an American court is in the best position to consider the American conduct of American defendants.

While Defendants have consistently argued that this case is not about their conduct in the United States, Plaintiffs have alleged that it is based on Defendants' alleged actions here in the United States. The lack of any parallel proceeding in Peru, and the Peruvian courts' likely inability to hold Defendants responsible for

their alleged conduct, is a significant factor in favor of maintaining the case in Missouri.[4]

Having considered the sovereign interests and balanced the applicable Restatement factors, I conclude that abstention on the basis of international comity is not supported in this case. Missouri has a cognizable state interest in regulating the affairs of their corporate citizens. Peru and the United States lack an express position advocating for dismissal. The balance of factors weighs in favor of allowing Plaintiffs' case to proceed against Defendants in this Court. As a result, Defendants' motion to dismiss pursuant to the doctrine of international comity will be denied.

## III. Choice of Law

Even if the determination of foreign law was not precluded by the principles of res judicata, I find that Missouri law applies to this action. Defendants request that I make a determination, pursuant to Federal Rule of Civil Procedure 44.1 and Missouri choice-of-law principles, that the law of Peru governs this case. Plaintiffs counter their claims should be determined under Missouri law. The determination of foreign law under Rule 44.1 is a question of law that can be based on any

---

[4] Defendants argue that the Court could condition dismissal on Defendants' agreement to submit to the jurisdiction of Peruvian courts, but then in a footnote they argue that not all Defendants are potentially liable and therefore not all Defendants should be required to consent. [Doc. # 242, Defs.' Reply Br. at 28] In other words, the suggestion that Defendants would consent to jurisdiction in Peru is illusory.

relevant source, "whether or not submitted by a party and whether or not admissible under the Federal Rules of Evidence." United States v. Matya, 541 F.2d 741, 746 n.10 (8th Cir. 1976) (citing Fed. R. Civ. P. 44.1).

As an initial matter I find Defendants' argument that the internal affairs doctrine mandates the application of Peruvian law to be without merit. After analyzing the claims for relief, I find that there is no conflict between Peruvian and Missouri law. Consequently, there is no need to employ a choice of law analysis. Finally, even if a choice of law analysis is necessary under the most significant relationship test, Missouri law controls the outcome of this case.

A. The Internal Affairs Doctrine Does Not Apply to This Case

Defendants first argue that under the "internal affairs doctrine" that the Court must apply Peruvian law to these theories because non-party Doe Run Peru was incorporated in Peru. Although the complaint lacks express claims related to piercing the corporate veil, Defendants have cited specific portions of the complaint premised upon veil-piercing to support their argument that the internal affairs doctrine applies to this matter. [Doc. # 289, Defs.' Reply Br. at 36-38]

> The internal affairs doctrine is a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs – matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders – because otherwise a corporation could be faced with conflicting demands.

Edgar v. MITE Corp., 457 U.S. 624, 645 (1982). Some courts have interpreted this doctrine to mean that any consideration of whether the corporate veil could be

pierced must be determined using the law of the state of incorporation. Defendants urge that under this doctrine the Court must use the law of Peru.

Defendants cite to cases supporting their premise that veil piercing requires "a court to examine the internal structure and administration of a corporation and its parents or affiliates[.]" [Doc. # 255, Defs.' Memo. in Support at 14. Even so, this does not necessarily mean that veil piercing itself requires application of the internal affairs doctrine. The internal affairs doctrine provides that the law of the state of incorporation should be applied when internal corporate governance matters are at issue, to ensure uniform applications of law. Defendants' cases illustrate this. In In Re Bridge Info. Sys., Inc., the court noted that the internal affairs doctrine generally applies to disputes involving the administration or governance of a corporation. 325 B.R. 824, 830 (Bankr. E.D. Mo. 2005).

The matter of Yates v. Bridge Trading Co., 844 S.W.2d 56 (Mo. Ct. App. 1992), another case relied on by Defendants, was an action brought by a stockholder against a Delaware corporation based on a stock purchase agreement that contained a Missouri choice-of-law provision. Discussing the internal affairs doctrine, the court recognized that the issuance of stock is part of the internal affairs of a corporation, which would "require[] the application of the laws of the state of incorporation." Id. at 61. The court, however, nevertheless noted the flexibility of the internal affairs doctrine as applied to pseudo-foreign corporations

as well as the most-significant-relationship test used by other courts to apply local law to a foreign corporation's internal affairs, and determined that the internal affairs doctrine did not require application of Delaware law to the agreement in the circumstances of that case.  Id. at 61-62.

Comment e of the Restatement (Second) of Conflict of Laws § 302 explains that matters regarding a corporation's internal administration, such as the election or appointment of directors, the adoption of bylaws, the issuance of corporate shares, or cumulative voting requirements should be governed by a single law. Restatement (Second) of Conflict of Laws § 302 cmt. e (1971).  This is because it would be impractical to have these sorts of internal matters, "which involve a corporation's organic structure or internal administration, governed by different laws."  Id.  As the case does not involve any disputes about the internal affairs of the various defendants, the internal affairs doctrine is not applicable to this action. As a result, I reject this argument as a basis for Peruvian law to govern the outcome of this litigation.

### B. There is No Conflict Between Peruvian and Missouri Law Regarding the Claims at issue

Defendants argue that Missouri and Peruvian law are in conflict with respect to the substantive claims, thus an application of the most significant test is necessary to resolve the conflict of laws.  Although a court making a Rule 44.1 determination may examine any relevant material, "it is under no obligation to do

so if the party whose burden it is fails to produce sufficient evidence that foreign law applies." In re Vivendi Universal, S.A. Sec. Litig., 618 F. Supp. 2d 335, 340 (S.D.N.Y. 2009). Where the parties do not adequately prove foreign law so as to "'enable the court to apply it in a particular case,'" the law of the forum applies. Mzamane v. Winfrey, 693 F. Supp. 2d 442, 469 (E.D. Pa. 2010) (quoting Bel-Ray Co., Inc. v. Chemrite Ltd., 181 F.3d 435, 440 (3rd Cir. 1999)). A court has no duty to make further inquiries of a party who fails to prove the content of the applicable foreign law. See Vivendi, 618 F. Supp. 2d at 340.

With regard to choice-of-law principles, both federal common law and Missouri law follow the approach outlined in the Restatement (Second) of Conflict of Laws. See Eli Lilly Do Brasil, Ltd. v. Fed. Express Corp., 502 F.3d 78, 81 (2nd Cir. 2007); Kennedy v. Dixon, 439 S.W.2d 173, 184 (Mo. banc 1969); see also Blake v. Comm'r, 697 F.2d 473, 477 n.4 (2nd Cir. 1982) (declining to decide whether federal or forum state choice-of-law principles applied because the result was the same either way). Both Missouri and the federal common law determinations begin with an investigation of whether the laws conflict in the first place. See Prudential Ins. Co. of Am. v. Kamrath, 475 F.3d 920, 924 (8th Cir. 2007).

I conclude that the laws of Peru do not actually conflict in any significant, substantive way with Missouri law. When the legal principles are the same in both

jurisdictions, there is no need to employ a choice-of-law analysis.  Phillips v. Marist Soc'y of Washington Province, 80 F.3d 274, 276 (8th Cir. 1996).  When there is no conflict of law, the law of the forum where the action is brought controls.  Forsyth v. Cessna Aircraft Co., 520 F.2d 608, 613 (9th Cir. 1975).  For each of Plaintiffs' claims under Missouri law, a comparable form of relief exists under Peruvian law.

Counts I and IV state negligence claims against the corporate entities and individual defendants.  Peruvian law recognizes negligence as a cause of action under Articles 1985 and 1981 of the Civil Code of Peru.  Article 1981 creates a broad duty of care for those engaged in "the exercise of their duties" when "another person under his command is responsible for said damage" of a person.  [Doc. # 282, Ex. JJJJJ, Espinoza Report at ¶ 5.52]  Defendants were directly or indirectly responsible for the La Oroya Complex and the alleged discharge of pollutants.  Article 1985 is analogous to both direct cause and proximate cause, two essential elements for a claim of negligence.  Plaintiffs allege that their harm was a foreseeable consequence when Defendants allegedly failed to implement measures to reduce environmental harm.  [Id. at ¶ 5.62]  Article 1985 assesses damages for any consequences derived from the action or omission that generated the harm.  [Id. at ¶ 5.61]  Additionally, Articles 142.1 and 142.2 of the General Environmental Law create a right of action against anyone that causes damage to

23

the environment or human health, specifically defining environmental damage as "any material impairment suffered by the environment . . . that may be caused through the breach of legal provisions and which results in actual or negative potential effects." [Id. at ¶ 5.46]  The reference to breach of legal provisions is similar to the breach of duty required under American negligence law.  Read together these Articles indicate that Peru recognizes claims analogous to negligence.

Counts III and VI state strict liability claims against the corporate entities and individual defendants.  Under Article 1970 of the Civil Code, "anyone through the exercise of a risky or dangerous activity, causes damage to another person, is required to redress said damage." [Id. at ¶ 5.30]  In discussing multiple cases and health regulations, Professor Espinoza concludes mining and the related mine safety of the environment are considered an implicitly risky activity because these activities can affect the health of persons. [Id. at ¶ 5.31-5.40]  Additionally, Articles 142.1 and 142.2 of the General Environmental Law allow claims analogous to strict liability because the text of the statute creates a right of action for anyone that causes damage to the environment or human health while engaging in an activity.  The text of the statute defines environmental damage as "any material impairment suffered by the environment…that may be caused through the breach of legal provisions and which results in actual or negative potential effects."

[Id. at ¶5.42]  Moreover, Article 142.2 establishes liability for *any* damage to the environment  in connection with an illicit action because of the irregular nature of the activity at issue.  [Id. at ¶ 5.49]

Counts II and V state conspiracy claims against the corporate entities and individual defendants.  Under Peruvian law, Articles 1981and 1983 establish joint liability for the actions of a parent and subsidiary, an analogous claim to civil conspiracy.   Under Article 1981, liability can be established from an underlying illicit act and if multiple parties are engaged in the illicit act, then all parties are jointly liable on the basis of fully compensating the victims.  [Id. at ¶ 5.28.  When the underlying act is one of strict liability, then both principal and agent are jointly liable.  [Id. at ¶ 5.29]  Under Article 1983, mere environmental damage can suffice to establish joint liability.  [Id. at ¶ 5.55]  These articles are analogous to a conspiracy claim because it is the participation in an illicit act itself, which is a similar to an act that is in the furtherance of a conspiracy.  Further, the Peruvian bar for a conspiracy claim is lower than the Missouri requirements because Missouri requires an underlying tort to satisfy the unlawful act, whereas Peruvian law does not have this requirement and mere environmental harm can suffice to establish liability.  For similar reasons Count VII, contribution against all defendants, does not conflict with Missouri law.

Although Peruvian law may not identify the claims at issue by the same doctrinal name and Peru's litigation procedure is different than in Missouri, this does not mean that the same substantive relief cannot be obtained in both jurisdictions. Given the similarity in the causes of action under Peruvian and Missouri law, making a further choice-of-law analysis is unnecessary. Defendants have failed to prove a true conflict exists between Missouri and Peruvian law. If the movant fails to prove foreign law with reasonable certainty, a district court should apply the law of the forum. Banque Libanaise Pour Le Commerce v. Khreich, 915 F.2d 1000, 1006-07 (5th Cir. 1990). The parties offer conflicting experts on Peruvian law, who reach opposite conclusions regarding the same provisions of Peruvian law. This indicates a lack of reasonable certainty regarding which controlling law to apply, either Missouri or Peru. Missouri law will apply in this case because of the lack of conflict between Peruvian law and that of Missouri.

C. Missouri Law Applies Under the Most Significant Relationship Test

Even if a conflict were present, under the principles of the most-significant-relationship test, Missouri law would still control. There is no doubt that the injuries occurred in Peru, but that does not mean that the conduct giving rise to injuries occurred solely in Peru. Plaintiffs allege that the decisions made by Defendants in Missouri directly gave rise to Plaintiffs' injuries. Missouri has a substantial connection with this case because Missouri is the principal place of

business of several of the corporate defendants and most of the individual defendants resided or worked here during the relevant times. See In Re Air Crash Disaster Near Chicago, Ill., 644 F.2d 594, 613 (7th Cir. 1981) (noting an interest because of principal place of business). Missouri certainly has an interest in deterring malfeasance by its domestic corporations and providing a place of redress for harm caused by its citizens. Reid-Walen, 933 F.2d at 1400. Missouri has an interest in applying its tort law because – as the state where several Defendants are incorporated and the misconduct occurred – Missouri has a greater ability to control corporate behavior by deterrence or punishment than Peru, the place where the injury occurred. In re Air Crash Disaster Near Chicago, Ill., 644 F.2d at 615. The policies that underlie toxic tort law include punishing and deterring wrongdoing, not just compensating the victims, something Missouri has an interest in doing. See Singh v. Edwards Lifescience Corp., 210 P.3d 337, 342 (Wash. Ct. App. 2009) (noting a state has an interest in deterring wrongdoing by its corporations).

Defendants have failed to meet their burden of showing that Peruvian law should apply in this matter. There is no substantial conflict between Missouri and Peruvian law with regard to the claims in this case. Even if a conflict existed, Missouri law would have a more significant relationship because of the allegations of wrongdoing in Missouri by Missouri corporations and citizens. As a result,

Defendants' motion to determine foreign law, wherein they ask that I apply Peruvian law to the claims in this case, will be denied.

Accordingly,

**IT IS HEREBY ORDERED that** Defendants' motion to dismiss pursuant to the doctrine of international comity [135] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' motion for determination of foreign law [253] is **DENIED**.

**IT IS FURTHER ORDERED that** the Clerk of Court shall docket this order in any case which is pending consolidation with the present case.


RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 11th day of February, 2019.